**PRICE LAW GROUP**
David Chami, Esq. (AZ Bar # 027585)
8245 N. 85th Way, Suite 4349
Scottsdale, Arizona 85258
Email: David@pricelawgroup.com
Phone: (818) 600-5515
Fax:    (818) 600-5415

**RM WARNER, PLC**
Raeesabbas Mohamed, Esq. (AZ Bar # 027418)
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Email: Raees@RMWarnerlaw.com
Phone: (480) 331-9397
Fax:   (866) 961-4984

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Mohamed Sabra; and Council on American-Islamic Relations of Arizona, <br><br> Plaintiffs, <br><br> vs. <br><br> Maricopa County Community College District; and Nicholas Damask, in his official and individual capacity <br><br> Defendants. | **Case No.** <br><br> **COMPLAINT** |

//

//

**PARTIES**

1. Mohamed Sabra (hereinafter "Plaintiff" or "Sabra") is a resident of Scottsdale, Arizona. He is a political science major at Scottsdale Community College and was enrolled in Defendant Nicholas Damask's political science class, which is at issue in this litigation.

2. The Council on American-Islamic Relations of Arizona, Inc. ("CAIR-AZ") is an Arizona-based 501(c)(3) non-profit organization committed to advocacy and protecting the civil rights of American Muslims while promoting justice.

3. Defendant Maricopa County Community College District (hereinafter "Scottsdale Community College" or "SCC") is a taxpayer funded organization.

4. Defendant Nicholas Damask (hereinafter "Damask") is a professor of "World Politics", also known as "POS120" at SCC. Damask is also the Social and Behavioral Sciences Evening / Summer Department Chair at SCC, and as such, serves SCC in his official capacity. Defendant Damask is also named in his individual capacity.

**JURISDICTION & VENUE**

5. This Court has Jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Plaintiffs allege a violation of the First Amendment to the United States Constitution.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because both Defendants reside in Arizona. Venue is also proper here pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the District.

**FACTUAL BACKGROUND**

7. In the Spring 2020 semester, Mr. Sabra enrolled in Defendant Damask's World Politics class. Defendant Damask's course description states: "Introduction to the principles and issues relating to the study of international relations. Evaluation of the political, economic, national, and transnational rationale for international interactions." It does not

state that it includes instruction based on one-sided, biased perspectives of Islam or that it excludes other ideologies of Islam.

8. According to the syllabus, the course was divided into six modules, with the last being captioned, "Islamic Terrorism."

9. The Islamic Terrorism module had three components: (1) a PowerPoint presentation; (2) an excerpt from *Future Jihad*; and (3) a quiz.

10. The PowerPoint presentation, created by Damask, was titled "Islamic Terrorism" and had three sub-topics: (1) "Defining Terrorism"; (2) "Islamic Terrorism: Definition"; and (3) "Islamic Terrorism: Analysis."

11. Damask's misguided personal biases against Islam and his advocacy for the staunch disapproval of Islam is injected within 42 slides of class material. *See* **Exhibit A**, attached hereto and incorporated by reference as if fully set forth herein.

12. The first sub-topic was a general overview of terrorism and the differences between it and other forms of war.

13. In this section, Damask states: "effectively there is no non-Islamic international terrorism in the contemporary world."[1]

14. The final slide of the first sub-topic is made up of numerous statistics, none of which contain citations to authoritative references, that compare alleged killings by "Islamic terrorists" to other groups such as the "Ku Klux Klan." For example: "Islamic terrorists kill on average more people every 90 days than the number of blacks killed by the Ku Klux Klan in its entire 120+ year history."[2]

15. Notably absent from any of Defendant Damask's terrorism materials is any discussion of the Ku Klux Klan, Nazi's, militant fascism and neo-conservativism, and their scripture-based terrorism against African Americans, Judaism, and other ethnic minorities

---

[1] Exhibit A, p. 20.
[2] *Id.* at 21.

throughout history in the United States.[3] Defendant Damask failed to even mention domestic terrorism in the United States spurred by White Supremacy and racially motivated hate crimes, despite the fact that The Federal Bureau of Investigation has marked White Supremacy in the United States as a significant domestic terrorism concern.[4] It is an unquestionable fact that the Ku Klux Klan espoused Protestant Christian ideologies to wage terror in the United States in an attempt to create their own nation-state, and even believed that Jesus was the first Klansman. However, none of this material is discussed in any of Defendant Damask's modules, despite its impact on national and international politics.

16.   In the second sub-topic, Damask states: "Islamic terrorism should be understood within the broader history of Islamic warfare against unbelief, termed in Islamic theology jihad, the Arabic root of which means 'a condition of efforts' or 'striving.' The 'efforts' to be undertaken are physical, not simply prayer or introspection."[5] Defendant Damask failed to instruct students that prayer, introspection, and spiritual struggle are in fact the actual mainstream belief of Muslims when discussing "jihad."

17.   Additionally, Defendant Damask says that "Politically-speaking, jihad is a *religiously-justified, communal mobilization of the resources and capabilities of the Muslims population for war against unbelievers*."[6] (emphasis in original). Defendant Damask failed to provide any counter-arguments or opposing viewpoints and instructs students to insist that his personal beliefs are facts, when they are not.

18.   Defendant Damask goes on to intentionally distort the context of specific Quranic verses that he quotes in his material. For example, without any context or discussion, Damask cites to the following purported English translation of a Quranic verse

---

[3] Damask's "Module 1" reading assignment includes five-and-a-half pages of an excerpt entitled, "The Surrender at Munich," from *The Rise and Fall of the Third Reich*, by William L. Shirer. The excerpt does not discuss Nazi ideology or its influence on American or global politics.
[4] https://www.fbi.gov/news/testimony/confronting-white-supremacy.
[5] Exhibit A, at p. 22
[6] *Id.*

for the proposition that terrorism is encouraged in Islam: "It is important to note that the Quran places great emphasis on praising those who fight, declaring them to be 'one degree over' those who do not [4:95]."[7]

19. Then, Defendant Damask explains that there is a "theological mandate for jihad" on Muslims.[8]

20. Defendant Damask continued to support his gross misinterpretations of the alleged "theological mandate for jihad" by misconstruing the two primary sources of Islam, the Quran (the Muslim holy scripture) and the Hadith, (Prophet Muhammed's sayings, teachings, and actions).[9]

21. Defendant Damask then purports to sparsely quote seven verses from the Quran, none of which are complete or accurate quotes, and all of which are gross misconstructions of the Quran, which reflect Damask's own personal hostility towards Islam.[10]

22. Defendant Damask asserts that the Quran instructs Muslims to follow the Hadith, and thereafter states that the Quran speaks to the "establishment of Islam through violent struggle against Non-Muslims, including the use of terror," and "jihad."[11]

23. Defendant Damask used an English translation and then highlighted and bolded the words "terrorize" and "terror" claiming that the use of these words in the translation supported his position that Islam supports terrorism. However, Damask failed to disclose that his purported translation is inaccurate, and that many translations of these verses by actual scholars do not even use the words "terrorize" or "terror."[12]

---

[7] *Id.*
[8] *Id.* at 23.
[9] *Id.* at 22-27.
[10] *Id.* at 23.
[11] *Id.* at 24.
[12] *Id.*

4

24. Damask's pointed disapproval of Islam as a legitimate and peaceful religion continues with his advocation of Prophet Muhammed being a terrorist. Damask urges that Islamic terrorism's "roots can be traced back to the Prophet Muhammad himself."[13]

25. Damask states: "The central role of the Prophet Muhammad: *All* Islamic terrorists sanctify their actions through pious references to the Quran and the traditions of the Prophet Muhammad, and by extensive use of longstanding Islamic legal doctrines."[14] (emphasis in original).

26. He also depicted a picture of Prophet Muhammad and said that "Muhammad himself committed acts that also unambiguously would be regarded as terrorism today."[15]

27. Throughout the rest of the PowerPoint, Damask makes four blatantly false and inflammatory statements about Islam, while purporting them to be facts:

28. "Contentions that Islam does not promote warfare or violence cannot be supported on either theological or historical grounds – indeed, such contentions would flatly contradict hundreds of Quranic passages and *hadiths* ('traditions') of Muhammad, as well as longstanding Islamic jurisprudence."[16] (emphasis in original);

29. "Legitimacy of Islamic terrorism is supported by nearly every legal source Islamic legal authority."[17];

30. "As with terrorism and jihad generally, contemporary Islamic legal authorities are unanimous in their approval of suicide attacks."[18]; and

31. "Muslim popular opinion has some sympathy for terrorism generally, and the ultimate goals of terror group (sharia) particularly."[19]

---

[13] *Id.* at 26, 27.
[14] *Id.* at 25.
[15] *Id.* at 26, 27.
[16] *Id.* at 25.
[17] *Id.* at 28.
[18] *Id.* at 33.
[19] *Id.* at 40.

32. The final sub-topic explained how different groups deal with Islamic Terrorism.

33. The next part of the module was the assigned reading of excerpts from *Future Jihad* by Walid Phares, a known Islamophobe who openly promotes anti-Muslim ideologies. *See* **Exhibit B**, attached hereto and incorporated by reference as if fully set forth herein. Within this mandatory reading assignment, Phares explains that jihad is not a "spiritual phenomenon that could be and was abused by extremist ideologies," but rather "a call for [physical] action."[20]

34. Damask failed to articulate that other more acceptable and in fact, mainstream views of "jihad" have nothing to do with physical violence, but instead he improperly urged students to accept his personal, biased interpretations as academic facts.

35. Notably, Damask failed to inform his students in any written materials that Walid Phares is not a neutral author and only represents *one* perspective – an extreme perspective – that "jihad" has only one meaning, "as a call for action" and that the West has "sanitized it and camouflaged it."[21]

36. Damask failed to disclose in any class materials that Walid Phares espouses anti-Muslim ideologies and has publicly demonized Islam, that Phares is known to have been an adviser to international criminal and Lebanese fascist, Samir Geagea, who was incarcerated for ordering church bombings and political assassinations in Lebanon in order to spark a war against Muslims in Lebanon. These are critical facts that should have been disclosed by the Defendants to students who seek academic truths and were enrolled in Damask's World Politics class.[22]

37. The most egregious denunciation of Islam and injection of personal hostilities against Islam are found in Damask's semester-ending quiz, compromised of 25 multiple

---

[20] Exhibit B, p. 18, 19.
[21] *Id.* at 19.
[22] https://www.motherjones.com/politics/2011/10/walid-phares-mitt-romney-lebanese-forces/

choice questions. *See* **Exhibit C**, attached hereto and incorporated by reference as if fully set forth herein. Below are a few examples of the questions and answer choices that demonstrate a clear hostility and disapproval of Islam while also factually incorrect:

38. Question 9: "Where is terrorism encouraged in Islamic doctrine and law?"[23]

    (1) The Medina verses
    (2) The Muhammad verses
    (3) The Mecca verses or
    (4) Terrorism is not encouraged in Islamic doctrine and law.

39. The correct answer was number 1, "the "Medina verses."

40. Question 12: "Who do Islamic terrorist strive to emulate?"[24]

    (1) The Prophet Muhammad
    (2) Saddam Hussein
    (3) Osama bin Laden or
    (4) Ibn Tamiyyah.

41. The correct answer was number 1, "the Prophet Muhammad."

42. Question 15: "Contemporary Terrorism is?"[25]

    (1) Communist / Left-wing
    (2) Islamic
    (3) Mormon or
    (4) Fascist / Right-wing.

43. The correct answer was number 2. "Islamic."

44. Question 19: "Walid Phares notes that although 'gullible' Westerns are taught that jihad can have two meanings, people in the Arabic world understand that its overwhelmingly obvious meaning is?"[26]

    (1) Struggle against sin
    (2) Spiritual contemplation
    (3) Combat / war or
    (4) Peace.

---

[23] Exhibit C, p. 6.
[24] *Id.* at 7.
[25] *Id.* at 9.
[26] *Id.* at 11.

45. The correct answer was 3, "Combat / war."

46. Question 20: "Terrorism is _____ in Islam?"[27]

>(1) Justified within the context of jihad
>(2) Always forbidden
>(3) Justified under international law or
>(4) Always justified.

47. The correct answer was 1, "Justified within the context of jihad."

48. Defendant's admonishment against Islam and instruction that Islam is terrorism is no different than stating that Christianity and the Bible mandate Christians to follow the KKK and engage in terrorism against African American, Jews, and ethnic minorities. There is no place in higher-education for the furtherance of false personal biases designed to create hostility against particular religions, regardless of the religions.

49. On April 29, 2020, Mr. Sabra, a practicing Muslim, took this quiz and was shocked and offended to see the answer choices given for the questions above (all of which he got wrong).

50. Mr. Sabra was forced to make a decision; either disavow his religion or be punished by getting the answers wrong on the quiz.

51. Sabra answered the questions correctly based on how Muslims practice their religion. However, those answers were marked as incorrect by Damask.

52. As Damask teaches the course Muslim students must either disavow their religion or have their answers marked as incorrect.

53. Mr. Sabra emailed Damask explaining that the questions and answers were "absolutely in distaste of Islam," and that he felt "disgust[ed]."

54. On April 30, 2020, a known comedian made and circulated an Instagram video on why the questions were inappropriate and challenged SCC on how they could allow such biased disapproval of a religion. The video went viral.

---

[27] *Id.*

55. That same day, SCC contacted the Mr. Sabra to discuss the issue. Defendant SCC stated they would investigate the complaint, but less than 24 hours after the investigation, the Interim President of SCC posted a statement on the official school Instagram page:

> …SCC senior leadership has reviewed the quiz questions and agrees with the student that the content was inaccurate, inappropriate, and not reflective to inclusive nature of college. SCC deeply apologizes to the student and to anyone in the broader community who was offended by the material. SCC Administration has addressed with the instructor the offensive nature of the quiz questions and their contradiction to the college's values. The instructor will be apologizing to the student shortly, and the student will receive credit for the three questions. The questions will be permanently removed from any future tests.

56. SCC stated that they would give Sabra credit for the three questions referenced above but failed to address what would be done about the other questions requiring disavowal of Sabra's religion; as of the date of this filing the points have not been credited.

57. However, SCC knew or had constructive knowledge that this module was going to be taught in this class, because under Maricopa Community College District Regulation 3.6, "a copy of the course syllabus must be submitted to the division/department office at the college no later than the end of the first week of class." Furthermore, Defendant Damask, as department chair, has apparent authority to implement this module for and on behalf of SCC.

58. SCC not only condoned the material but approved of its use in the classroom.

59. Damask has been teaching this class for 24 years and upon information and belief will continue to teach and remain the Department Chair.

60. Damask is scheduled to teach this course again in the Summer semester starting on 6/8/2020, and the Fall semester starting on 8/24/2020.

61. The Maricopa County Community College District has publicly defended Damask, and stated that despite their intent to "investigate", the investigation will not involve Damask and that he is not at risk of losing his job.

62. On May 11, 2020, Defendant Damask publicly stated: "I'll **never** apologize for teaching **the content that I am**, or the manner in which I'm teaching it," (emphasis added).

63. In an attempt to remedy the damage done by Damask, CAIR-AZ has had to divert their resources to create a campaign correcting the Islamophobic information. CAIR-AZ has contracted with a religious scholar to create materials for this campaign.

### FIRST CAUSE OF ACTION
**Violation of the Establishment Clause of the First Amendments to the U.S. Constitution**

64. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

65. Defendants' violations were committed under color of state law and are actionable under 42 U.S.C. § 1983.

66. Under the Establishment Clause, the Government cannot act in an official way that has the primary effect of disapproving or being hostile towards any religion.[28]

67. Damask teaches a module concluding that Islam "mandates" terrorism and the killing of Non-Muslims, and that this is the only interpretation of religious texts, but without any disclaimer to inform students that this is one-perspective and that Islam itself does not condone terrorism.

68. Similarly, Damask is not teaching that only some extremists espouse these beliefs, but rather that literally, Islam itself teaches the mandates of terrorism (e.g., "Legitimacy of Islamic terrorism is supported by nearly every legal source Islamic legal authority.")

69. The only objectively reasonable construction of Damask's actions is that his primary message is the disapproval of Islam.

---

[28] The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244, (1982).

70. Scottsdale Community College was at all relevant times on notice that Damask was teaching the disapproval of Islam because Maricopa Community College District Regulation 3.6 requires its approval.

71. Damask, as the division/department chair, engaged in these actions and thus as the final policymaker, Damask's actions are attributable to SCC.

## SECOND CAUSE OF ACTION
**Violation of the Free Exercise Clause of the First Amendments To The U.S Constitution**

72. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

73. Under the Free Exercise Clause, the Government cannot force a person to condemn a particular religion, or penalize a student for not agreeing that only one interpretation of a religion is an accurate and acceptable interpretation.

74. Damask's module quiz forced Sabra to agree to his radical interpretation of Islam. When Sabra did not, he was penalized by getting the questions wrong and impacted his grade.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, and award the following relief:

A. Declare that Defendants' actions in teaching the materials violated the Establishment Clause of the First Amendment of the United States Constitution;

B. Temporarily and permanently enjoin Defendants, their officers, and employees from teaching the violative materials unless and until the materials are modified such that they do not have the primary effect of disapproving of Islam;

C. Award Plaintiffs nominal damages;

D. Award Plaintiffs their reasonable costs and attorney's fees; and

E. Grant such other and further relief as the Court may deem to be just and proper.

1     Dated June 2, 2020

2     Respectfully Submitted,

3

4                             By /s/ *David Chami*
                              David Chami, Esq. (AZ Bar # 027585)

5                               PRICE LAW GROUP, APC
                              8245 N. 85th Way, Suite 4349

6                               Scottsdale, Arizona 85258
                              Phone: (818) 600-5515

7                               Fax:     (818) 600-5415

8                               Raees Mohamed, Esq. (AZ Bar # 027418)
                              RM WARNER

9                               8283 N. Hayden Road, Suite 229
                              Scottsdale, Arizona 85258

10                              Phone: (480) 331-9397
                             Fax:     (866) 961-4984

11

12                              *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24