**PRICE LAW GROUP**
David Chami, Esq. (AZ Bar # 027585)
8245 N. 85th Way, Suite 4349
Scottsdale, Arizona 85258
Email: David@pricelawgroup.com
Phone: (818) 600-5515
Fax:    (818) 600-5415

**RM WARNER, PLC**
Raeesabbas Mohamed, Esq. (AZ Bar # 027418)
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Email: Raees@RMWarnerlaw.com
Phone: (480) 331-9397
Fax:    (866) 961-4984


*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Mohamed Sabra; and Council on American-Islamic Relations of Arizona,<br><br>       Plaintiffs,<br><br>       vs.<br><br>Maricopa County Community College District; and Nicholas Damask, in his official and individual capacity<br><br>       Defendants. | Case No.  2:20-cv-01080-DMF<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>**ORAL ARGUMENT REQUESTED** |

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................. 1

TABLE OF AUTHORITIES ...................................................................................... 2

MEMORANDUM IN SUPPORT OF A MOTION FOR PRELIMINARY INJUNCTION ............................................................................................................. 3

INTRODUCTION ...................................................................................................... 3

ARGUMENT .............................................................................................................. 4

I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST AMENDMENT CLAIM REGARDING AN ESTABLISHMENT CLAUSE VIOLATION ................................................................... Error! Bookmark not defined.

A.   THE CLASS MODULE'S PRIMARY EFFECT IS DISAPPROVAL OF ISLAM ....................................................................................................................... 7

1.   THE POWERPOINT PRESENTATION ESTABLISHES DAMASK'S DISAPPROVAL OF ISLAM ........................................................................... 7

2.   THE ASSIGNED READINGS REINFORCE THE DISAPPROVAL OF ISLAM FROM THE POWERPOINT ....................................................................... 10

3.   THE QUIZ REINFORCES THE DISAPPROVALS FROM BOTH THE POWERPOINT AND THE READINGS ........................................................... 11

B.   PRIOR PRECEDENT SUPPORT A PRELIMINARY INJUNCTION FOR THIS SEVERE ACT OF DISAPPROVAL ......................................................... 13

II.   PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM ABSENT PRELIMINARY RELIEF ....................................................................... 18

III.   THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR AND THE INJUNCTION IS IN THE PUBLIC INTEREST ........................................... 18

CONCLUSION ......................................................................................................... 19

RELIEF REQUESTED ............................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ............................ 5

*American Family Association, Inc. v. City & Cty. of San Francisco*, 277 F.3d 1114  (9th Cir. 2002) ...................................................................................................... 5,14

*California Parents for Equalization of Educ. Materials v. Torlakson*, 370 F. Supp. 3d 1057 (N.D. Cal. 2019). ...................................................................................................... 6,16

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975 (9th Cir. 2011) ................................................................................................................. 6,16-17

*Davies v. Los Angeles Cty. Bd. of Supervisors*, 177 F. Supp. 3d 1194(C.D. Cal. 2016) ..... 19

*Doe v. Kelly,* 878 F.3d 710 (9th Cir. 2017) ......................................................... 19

*Farris v. Seabrook*, 677 F.3d 858 (9th Cir. 2012) ...................................................... 5

*Grove v. Mead Sch. Dist. No. 354.*, 753 F.2d 1528 (9th Cir. 1985). ..................................... 15

*Hardwick v. Cty. of Orange*, 844 F.3d 1112 (9th Cir. 2017) ................................................. 6

*Lemon v. Kurtzman*, 403 U.S. 602 (1971) ............................................................. 5

*Melendres v. Arpaio,* 695 F.3d 990 (9th Cir. 2012). ........................................................ 18

*Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959 (9th Cir.2002). .......................... 18,19

*Vasquez v. Los Angeles Cty.*, 487 F.3d 1246 (9th Cir. 2007). ............................................ 13

*Vernon v. City of Los Angeles*, 27 F.3d 1385 (9th Cir. 1994)......................................6,13-14

*Winter v. Nat'l Res. Def. Council,* 555 U.S. 7 (2008)..................................................5,18-19

**Constitutional Provisions**

U.S. Const. amend. 1 .....................................................................................*passim*

# MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

## INTRODUCTION

Plaintiffs', Council on American-Islamic Relations of Arizona ("CAIR-AZ") is an Arizona-based 501(c)(3) non-profit organization committed to advocacy and protecting the civil rights of American Muslims while promoting justice. Defendant, Maricopa County Community College District ("Scottsdale Community College" or "SCC") is a taxpayer funded organization. One of their professors is the other Defendant, Nicholas Damask ("Damask"). Damask is the Social and Behavioral *Sciences Evening / Summer Department Chair.* He teaches an online course titled "World Politics", also known as "POS120."

The course is broken up into six modules, the last module is titled "Islamic Terrorism."[1] Damask has taught a form of this module for the last 24 years.[2] Most recently, he taught it in the Spring 2020 semester at SCC.[3] On April 30, 2020, a known comedian made and circulated an Instagram video discussing why a portion of the Islamic Terrorism module quiz was inappropriate and disapproved of Islam.[4]

The comedian only knew of a few of the questions on the quiz. After Plaintiffs reviewed the entire module, they discovered the entire module disapproved of Islam.[5]

//

//

//

---

[1] *See* **Declaration of Mohamed Sabra**, ¶ 2.
[2] *See* **Declaration of Imraan Siddiqi**, ¶ 2.
[3] *See* Decl. of M. Sabra, ¶ 3.
[4] *See id.*, ¶ 4.
[5] *See* Decl. of I. Siddiqi, ¶ 3.

In the module, Damask repeatedly explained that Muslims have a "theological mandate" to kill Non-Muslims.[6] Damask failed to provide a disclaimer that his module only reflects the views held by radical extremists, and he closed the door to other interpretations by stating that this is **the only interpretation** possible, and furthermore that the mandate is a position unanimously accepted by scholars.[7]

In light of the video, SCC stated that "the questions will be permanently removed from any future test," but did not mention the rest of the module.[8] Nevertheless, on May 11, 2020, Damask publicly stated: "I'll **never** apologize for teaching **the content that I am**, or the manner in which I'm teaching it." (emphasis added).[9]

Damask is scheduled to teach this same course again at SCC in the Summer semester, 6/8/2020 – 7/16/2020, and the Fall semester, 8/24/2020 – 10/16/2020.[10] Damask will teach the Islamic Terrorism module on June 8th, and thus, Damask will disapprove of Islam, again, without recourse. Pursuant to Federal Rule of Civil Procedure 65, the Court should enjoin the Defendants from the unlawful practice of teaching this module that violates the Establishment Clause of the First Amendment to the United States Constitution.

## ARGUMENT

Plaintiffs are entitled to a preliminary injunction prohibiting the unconstitutional practice of disapproving of Islam through the Defendants' module because: (1) Plaintiffs are likely to succeed on the merits: (2) Plaintiffs are likely to suffer irreparable harm absent preliminary relief: (3) the balance of equities tips in Plaintiffs' favor, and (4) an injunction

---

[6] *See* Decl. of M. Sabra, ¶ 5.
[7] *See id*., at ¶ 8.
[8] *See* Decl. of M. Sabra, ¶ 6.
[9] *See* Decl. of I. Siddiqi, ¶ 5.
[10] *See* Decl. of M. Sabra, ¶ 14, Ex. G.

is in the public interest.[11] Plaintiffs are also entitled to preliminary relief under the "sliding scale" approach, the Ninth Circuit's "alternate formulation" of the *Winter* standard.[12]

Under this approach, as long as the *Winter* factors regarding irreparable harm and public interest are met, courts will issue an injunction where movants raise: (1) "serious questions going to the merits," and (2) the balance of equities "tips sharply towards the [movants]."[13]

## I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST AMENDMENT CLAIM REGARDING THE ESTABLISHMENT CLAUSE AND FREE EXERCISE CLAUSE VIOLATIONS.

The Establishment Clause of the First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion."[14] "This clause applies not only to official condonement of a particular religion or religious belief, but also to **official disapproval or hostility** towards religion."[15]

Government action of "condonement" or "disapproval" of religion is permissible when it passes the *Lemon* test: (1) it has a secular purpose; (2) the principal or primary effect neither advances nor inhibits religion; and (3) it does not foster "excessive state entanglement" with religion.[16] Defendants cannot pass the *Lemon* test, because they cannot satisfy the second prong of its analysis.

//

//

---

[11] *Winter v. Nat'l Res. Def. Council,* 555 U.S. 7, 20 (2008).

[12] *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).

[13] *Id.* (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[14] U.S. Const. amend. 1. (emphasis added).

[15] *American Family Association, Inc. v. City & Cty. of San Francisco*, 277 F.3d 1114, 1120–21 (9th Cir. 2002).

[16] *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, (1971).

The second prong, "secular effect," asks "whether it would be objectively reasonable for the government action to be construed as sending primarily a message of either endorsement or disapproval of religion."[17] Courts must analyze the primary effect from the perspective of an observer who is both informed and reasonable.[18]

The Ninth Circuit has stated that as "general matter, precedent on the Establishment Clause is scarce and we 'have little guidance concerning what constitutes a primary effect of inhibiting religion.'"[19] Nonetheless, this case is a "clear and obvious" violation of the Establishment Clause supported by the available guidance.[20]

Courts have already established that the "primary effect" of government action cannot primarily be disapproval of religion.[21] Thus, for example, if Damask were to say in class, he "disapproved of Christianity," he would violate the Establishment Clause. It follows then that if Damask had instead said "the Bible teaches that Christians must kill you" to his students, then that too would be a "clear and obvious" violation because the primary effect of that message is disapproval of Christianity.

Similarly, in this instance, Damask said multiple times throughout the entire module that Islam "mandates" Muslims to kill Non-Muslims. A "reasonable observer" would see that the "primary effect" of this message is far worse than just casual disapproval. SCC and Damask are saying that Muslims are dangerous and a threat to society.

---

[17] *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1398 (9th Cir. 1994).
[18] *California Parents for Equalization of Educ. Materials v. Torlakson*, 370 F. Supp. 3d 1057, 1068 (N.D. Cal. 2019).
[19] *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 987 (9th Cir. 2011) (internal citation omitted).
[20] *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017).
[21] *Vernon,* 27 F.3d at 1398.

This message instigates fear and hate towards Muslims similar to the hate that led to the attack on the Mosque in Christchurch, New Zealand.  Damask "abused his position of authority" by putting Muslim lives in danger from retribution by those receiving Damask's indoctrination instruction; thus, the module at issue has the principal effect of inhibiting the practice of Islam and no other legitimate purpose.[22] If this Court does not enjoin the Defendants by June 8, 2020, Defendants will again put the lives of Muslims at risk.

The Court's decision on whether the likelihood that the "primary effect" of the entire module is disapproval of Islam is easily answered, given that all three of Damask's Islamic Terrorism modules expressly disapprove of, and show hostility towards Islam: (1) the PowerPoint presentation; (2) an excerpt from *Future Jihad*; and (3) a quiz.[23]

**A.  THE CLASS MODULE'S PRIMARY EFFECT IS DISAPPROVAL OF ISLAM.**

**1.  THE POWERPOINT PRESENTATION ESTABLISHES DAMASK'S DISAPPROVAL OF ISLAM.**

Within this presentation, Damask's misguided personal biases against Islam and his advocacy for the staunch disapproval of Islam forms. The PowerPoint presentation, created by Damask, is titled "Islamic Terrorism."[24]

Damask states: "Islamic terrorism should be understood within the broader history of Islamic warfare against unbelief, termed in Islamic theology jihad, the Arabic root of which means 'a condition of efforts' or 'striving.'  The 'efforts' to be undertaken are physical, not simply prayer or introspection."[25]

---

[22] *Farnan,* 654 F.3d at 988.
[23] *See* Decl. of M. Sabra, ¶ 13, Ex. F.
[24] *See* Decl. of M. Sabra, ¶ 8, Ex. A.
[25] *See id*., Ex. A, p. 22.

7

Damask failed to instruct students that prayer, introspection, and spiritual struggle are in fact the actual mainstream belief of Muslims when discussing "jihad." He continues to say that "Politically-speaking, jihad is a *religiously-justified*, *communal mobilization of the resources and capabilities of the Muslims population for war against unbelievers*." (emphasis in original).[26] Defendant Damask failed to provide any counter-arguments or opposing viewpoints and instructs students to insist that his personal beliefs are facts, when they are not. Defendant Damask goes on to intentionally distort the context of specific Quranic verses that he quotes in his material.

For example, without any context or discussion, Damask cites to the following purported English translation of a Quranic verse for the proposition that terrorism is encouraged in Islam: "It is important to note that the Quran places great emphasis on praising those who fight, declaring them to be 'one degree over' those who do not [4:95]."[27] Then, he continued to support his gross misinterpretations of the alleged "theological mandate for jihad" by misconstruing the two primary sources of Islam, the Quran (the Muslim holy scripture) and the Hadith, (Prophet Muhammed's sayings, teachings, and actions).[28]

The Defendant then purports to sparsely quote seven verses from the Quran, none of which are complete or accurate quotes, and all of which are gross misconstructions of the Quran, which reflect Damask's own personal hostility towards Islam.[29]

*//*

---

[26] *See id.*
[27] *See id.*
[28] *See id.*, at p. 23-27.
[29] *See id.*, at p. 23.

1   //

2       He asserts that the Quran instructs Muslims to follow the Hadith, and thereafter

3   states that the Quran speak to the "establishment of Islam through violent struggle against

4   Non-Muslims, including the use of terror," and "jihad."[30]Damask used an English

5   translation and then highlighted and bolded the words "terrorize" and "terror" claiming

6   that the use of these words in the translation supported his position that Islam supports

7   terrorism.[31]

8       However, Damask failed to disclose that his purported translation is inaccurate, and

9   that many translations of these verses by actual scholars do not even use the words

10  "terrorize" or "terror." His pointed disapproval of Islam as a legitimate and peaceful

11  religion continues with his advocacy of Prophet Muhammed being a terrorist. Damask

12  urges that Islamic terrorism's "roots can be traced back to the Prophet Muhammad

13  himself."[32]

14

15      Damask states: "The central role of the Prophet Muhammad: *All* Islamic terrorists

16  sanctify their actions through pious references to the Quran and the traditions of the

17  Prophet Muhammad, and by extensive use of longstanding Islamic legal doctrines."

18  (emphasis in original).[33] He also depicted a picture of Prophet Muhammad and said that

19

20

21  _____

22      [30] *See id.*, at p. 22, 24.
        [31] *See id.*, at p. 24.
23      [32] *See id.*, at p. 26, 27.
        [33] *See id.*, at p. 25.
24

"Muhammad himself committed acts that also unambiguously would be regarded as terrorism today."[34]

---

[34] *See id.*, at p. 26, 27.

Throughout the rest of the PowerPoint, Damask makes four blatantly false and inflammatory statements about Islam, while purporting them to be facts:

"Contentions that Islam does not promote warfare or violence cannot be supported on either theological or historical grounds – indeed, such contentions would flatly contradict hundreds of Quranic passages and hadiths ('traditions') of Muhammad, as well as longstanding Islamic jurisprudence." (emphasis in original)[35];

"Legitimacy of Islamic terrorism is supported by nearly every legal source of Islamic legal authority."[36];

"As with terrorism and jihad generally, contemporary Islamic legal authorities are unanimous in their approval of suicide attacks."[37]; and

"Muslim popular opinion has some sympathy for terrorism generally, and the ultimate goals of terror group (sharia) particularly."[38]

### 2. THE ASSIGNED READINGS REINFORCE THE DISAPPROVAL OF THE POWERPOINT.

The next part of the module was the assigned readings of excerpts from *Future Jihad* by Walid Phares, a known Islamophobe who openly promotes anti-Muslim ideologies.[39] Within this mandatory reading assignment, Phares explains that jihad is not a "spiritual phenomenon that could be and was abused by extremist ideologies," but rather a call for [physical] action."[40]

//

---

[35] *See id.*, at p. 25.
[36] *See id.*, at p. 27.
[37] *See id.*, at p. 33.
[38] *See id.*, at p. 40.
[39] *See id.*, ¶ 9, Ex. B.
[40] *See id.*, Ex. B, p. 18, 19.

Damask failed to articulate that this view is generally only accepted by radicals and that the mainstream views of "jihad" have nothing to do with physical violence, but instead he improperly urged students to accept his personal, biased interpretations as academic facts.

Notably, Damask failed to inform his students in any written materials that Walid Phares is not a neutral author and only represents one perspective – an extreme perspective – that "jihad" has only one meaning, "as a call for action" and that the West has "sanitized it and camouflaged it."[41]

Damask failed to disclose in any class materials that Walid Phares espouses anti-Muslim ideologies and has publicly demonized Islam, that Phares is known to have been an adviser to international criminal and Lebanese fascist, Samir Geagea, who was incarcerated for ordering church bombings and political assassinations in Lebanon in order to spark a war against Muslims in Lebanon.[42] These are critical facts that should have been disclosed by the Defendants to students who seek academic truths and were enrolled in Damask's World Politics class.

### 3. THE QUIZ REINFORCES THE DISAPPROVAL OF BOTH THE POWERPOINT AND THE READINGS.

The most egregious denunciation of Islam and injection of personal hostilities against Islam are found in Damask's semester-ending quiz, compromised of 25 multiple choice questions.[43] Below are a few examples of the questions and answer choices that demonstrate a clear hostility and disapproval of Islam while also factually incorrect:

---

[41] *Id.*
[42] https://www.motherjones.com/politics/2011/10/walid-phares-mitt-romney-lebanese-forces/
[43] *See id.*, ¶ 10, Ex. C.

12

Question 9: "Where is terrorism encouraged in Islamic doctrine and law?"

(1)     The Medina verses

(2)     The Muhammad verses

(3)     The Mecca verses or

(4)     Terrorism is not encouraged in Islamic doctrine and law.[44]

The correct answer according to Damask was number 1, "the "Medina verses."

Question 12: "Who do Islamic terrorist strive to emulate?"

(1)     The Prophet Muhammad

(2)     Saddam Hussein

(3)     Osama bin Laden or

(4)     Ibn Tamiyyah.[45]

The correct answer according to Damask was number 1, "the Prophet Muhammad."

Question 15: "Contemporary Terrorism is?"

(1)     Communist / Left-wing

(2)     Islamic

(3)     Mormon or

(4)     Fascist / Right-wing.[46]

The correct answer according to Damask was number 2. "Islamic."

Question 19: "Walid Phares notes that although 'gullible' Westerns are taught that jihad can have two meanings, people in the Arabic world understand that its overwhelmingly obvious meaning is?"

---

[44] *See id.*, Ex. C, p. 6.
[45] *See id.*, at p. 7.
[46] *See id.*, at p. 9.

13

1   (1)   Struggle against sin

2   (2)   Spiritual contemplation

3   (3)   Combat / war or

4   (4)   Peace.[47]

5   The correct answer according to Damask was 3, "Combat / war."

6   Question 20: "Terrorism is _____ in Islam?"

7   (1)   Justified within the context of jihad

8   (2)   Always forbidden

9   (3)   Justified under international law or

10  (4)   Always justified.[48]

11  The correct answer according to Damask was 1, "Justified within the context of

12  jihad."

## B.  PRIOR PRECEDENT SUPPORT A PRELIMINARY INJUNCTION FOR THIS SEVERE ACT OF DISAPPROVAL.

This Court should rely on the Ninth Circuit's precedents that supports this case as likely succeeding on the merits. "The most instructive cases in our circuit… are *Vernon* and *American Family Association*, which addressed alleged violations of the Establishment Clause in a hostility to religion context."[49]

In *Vernon*, a city initiated an investigation into a police chief who was mixing his religion into the official policy of the force.[50]

//

---

[47] *See id.*, at p. 11.
[48] *Id.*
[49] *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1256 (9th Cir. 2007).
[50] 27 F. 3d 1388.

14

The Ninth Circuit held that a "reasonable observer" would not see that the "primary effect" of the investigation was to disapprove of his religion.[51] The court mentioned that the city "suggested…disapproval" when they included "consultation with religious elders on issues of public policy" within the scope of the investigation.[52]

However, the court said that the "primary effect" was to investigate illegal conduct.[53] Another factor that the court mentioned undermined the "primary effect" claim was that the city included "prominent disclaimers" in the investigation about the officer's entitlement to his personal religious views.[54]

In *American Family Association,* a city passed two resolutions and a letter that had disapproved of acts committed by the "religious right" towards the LGBTQ community.[55] The Court relied on *Vernon,* to say even though there was hostile language against religion, it was not the "primary effect."[56] Rather, "the documents, read in context as a whole" were to promote "equality for gays and discouraging violence against them."[57]

Turning to Plaintiffs' case, Damask's action of disapproval left no room for any "prominent disclaimers," and examining the module "as a whole" only strengthens the "primary effect" of his disapproval. Damask said in the presentation that the "mandate" to kill was an "unanimous" position, and that any other interpretation "contradicts" Islam.[58]

//

---

[51] *Id.* at 1399.
[52] *Id.* at 1398.
[53] *Id.*
[54] *Id.* at 1399.
[55] 277 F.3d at 1119.
[56] *Id.* at 1122.
[57] *Id.*
[58] *See* Decl. of M. Sabra, ¶ 8, Ex. A, p. 25, 33.

1    This premise is reinforced by the readings and the quiz. The only time Damask tried

2    to contextualize his statements or explain that there are different interpretations was when

3    the Co-Plaintiff, Mohamad Sabra, complained to him via email. However, Damask is

4    precluded from using this post hoc disclaimer to cure the violation because it was not given

5    while he was teaching. Only to the student in a private email after he taught it.

6    Additionally, Damask further precluded himself from using this disclaimer when he

7    went onto a podcast after his quiz questions went viral trying to argue what he is teaching is

8    factually correct information because it is from the primary sources of Islam. That somehow

9    it is correct to say that the 1.8 billion Muslims in the world have a "mandate" to kill the rest

10   of the population.

11   Thus, both *Vernon* and *American Family Association* support that Plaintiffs will likely

12   be successful on the merits because the primary effect was disapproval of Islam. The Ninth

13   Circuit and lower courts have examined alleged disapproval claims in schools. Mentioned

14   below are two cases that support the Plaintiffs. In *Grove v. Mead Sch. Dist. No. 354*, a group

15   of parents challenged a school board for not removing a book they claimed disapproved of

16   Christianity.[59] The court held that the book's effects were secular because it examined the

17   "expectations and orientations of Black Americans."[60] The court also noted that the book

18   "was included in a group of religiously neutral books in a review of English literature, as a

19   comment on an American subculture... [and not] anti-religion."[61]

20   //

21   //

---

23   [59] 753 F.2d 1528,1534 (9th Cir. 1985).
     [60] *Id.*
24   [61] *Id.*

Next, in *Torlakson*, a group of parents challenged a school's curriculum because they alleged it disapproved of Hinduism.[62] The court relied on *Vernon, American Family Association, and Grove* to say that the "primary effect" was not disproval but actual study of religions in a historical secular context.[63]

The court found that there were "prominent disclaimers" given to the students, and that the disapproving language was not actual "disparagement." [64] Both *Grove* and *Torlakson* put Damask on notice that he cannot "primarily disapprove" of religion, and if he does, he has to have a "prominent disclaimer." Damask makes it easy for this Court by going further than the plaintiffs in the cases above by actually disparaging Islam and saying it is the only interpretation. The "primary effect" of telling students that Muslims want to kill them is disapproval of Islam. Thus, *Grove* and *Torlakson* also support that Plaintiffs will likely be successful on the merits.

Lastly, Plaintiffs' case is distinguishable from *Farnan.* In *Farnan,* The Ninth Circuit affirmed a ruling that a teacher had qualified immunity to a statement he made that the lower court held primarily disapproved of religion.[65] The Ninth Circuit vacated the Establishment Clause ruling and "declined to consider the constitutionally" of the violation.[66] However, the court went into detail on whether the teacher would have "clear and fair waring" he was committing a violation.[67]

//

---

[62] 370 F. Supp. 3d at 1061.
[63] *Id.* at 1081.
[64] *Id.* at 1079.
[65] 654 F.3d.at 988.
[66] *Id.* at 976.
[67] *Id.* at 986.

The Ninth Circuit said that "teachers must be given leeway to challenge students to foster critical thinking skills… This balance is hard to achieve, and we must be careful not to curb intellectual freedom by imposing dogmatic restrictions that chill teachers from adopting the pedagogical methods they believe are most effective."[68]

Nevertheless, when teachers talk about religion, they "must be sensitive to students' personal beliefs and take care not to abuse their positions of authority."[69] In Plaintiffs' case, Damask "abused his position of authority" by saying Islam "mandates" the killing of Non-Muslims. It is not a "dogmatic restriction" to tell teachers that the primary effect of what they are teaching cannot disapprove of a religion. The Establishment Clause requires this.

There is no question, that Damask has the right to teach why terrorists use Islam to commit terrorism, but the **key factor** is that the primary effect cannot be disapproval of Islam. Damask could have protected himself with the Ninth Circuit's expansive protections for teachers by simply putting a "prominent disclaimer." However, Damask did not listen to the precaution the Ninth Circuit gave him.

Without any disclaimer in the Islamic Terrorism module; a reasonable observer would say that the "primary effect" is the message that Muslims will try to kill Non-Muslim. This is a "clear and obvious" violation of the Establishment Clause. Even though this Circuit has not yet held there has been a violation; the Plaintiffs' case will likely succeed in the merits because of how brash Damask's module is.

//

//

---

[68] *Id.* at 988.
[69] *Id.*

18

Regarding the Free Exercise Clause, the Government cannot force a person to condemn a particular religion, or penalize a student for not agreeing that only one interpretation of a religion is an accurate and acceptable interpretation. Incorporating the facts above, Damask's Islamic Terrorism module puts future Muslim students at risk of being forced to condemn their religion. The quiz and the course material leave no room for any other interpretation of Islam than Damask's.

## II.   PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM ABSENT PRELIMINARY RELIEF.

Plaintiffs will suffer irreparable harm absent preliminary relief because of the type of the violation. The Ninth Circuit held, "a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim."[70] The Islamic Terrorism module will be available to access once the course goes live on June 8, 2020.

Another Establishment Clause violation will occur if Damask is allowed to disapprove of Islam. "Deprivation of constitutional rights 'unquestionably constitutes irreparable injury'." [71]

## III.   THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR AND THE INJUNCTION IS IN THE PUBLIC INTEREST.

The remaining equitable factors in the preliminary injunction analysis weigh heavily in Plaintiffs' favor. The Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."[72]

---

[70] *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 973 (9th Cir. 2002).
[71] *Melendres v. Arpaio,* 695 F.3d 990, 1002 (9th Cir. 2012).
[72] *Winter,* 555 U.S. at 24

The Ninth Circuit has stated that "'the balance of hardships tips sharply' toward plaintiffs in First Amendment cases."[73] There is a "'significant public interest in upholding First Amendment principles'."[74] Additionally, The Ninth Circuit has held that "government suffers no harm from an injunction that merely ends unconstitutional practices and/or ensures that constitutional standards are implemented."[75]

In this case, Plaintiffs are asking the Court to stop the Defendants from teaching one module, not the entire course. This can be done with little hardship to the Defendants because POS120 is an online course and the module is only made up of three components. The Defendants have previously made the whole course inaccessible to the Co-Plaintiff in this case when they were reviewing the questions. This shows that it is not a burden to remove content, especially when it is likely to be considered an Establishment Clause violation.

## CONCLUSION

The Court should enjoin Defendants' from teaching the Islamic Terrorism module for violating the Establishment Clause of the First Amendment.

//

//

//

//

//

//

//

---

[73] *Davies v. Los Angeles Cty. Bd. of Supervisors*, 177 F. Supp. 3d 1194, 1206 (C.D. Cal. 2016) (quoting *Sammartano*, 303 F.3d at 973).

[74] *Id.* (quoting *Winter,* 555 U.S. at 20).

[75] *Doe v. Kelly,* 878 F.3d 710, 718 (9th Cir. 2017).

**RELIEF REQUESTED**

WHEREFORE, for the reasons stated above, Plaintiffs respectfully request this Honorable Court GRANT their Application for a Preliminary Injunction.

Dated: June 3, 2020

Respectfully submitted,

By /s/David Chami
David Chami, Esq. (AZ Bar #027585)
PRICE LAW GROUP
8245 N. 85th Way, Suite 4349
Scottsdale, Arizona 85258
P: (818) 600-5515
F: (818) 600-5415

By /s/Raees Mohamed
Raees Mohamed, Esq. (AZ Bar # 027418)
RM WARNER, PLC
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Phone: (480) 331-9397
Fax: (866) 961-4984