**PRICE LAW GROUP**
David Chami, Esq. (AZ Bar # 027585)
8245 N. 85th Way
Scottsdale, Arizona 85258
Email: David@pricelawgroup.com
Phone: (818) 600-5515
Fax:   (818) 600-5415

**RM WARNER, PLC**
Raeesabbas Mohamed, Esq. (AZ Bar # 027418)
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Email: Raees@RMWarnerlaw.com
Phone: (480) 331-9397
Fax:  (866) 961-4984

**COUNCIL ON AMERICAN-ISLAMIC
RELATIONS OF ARIZONA**
Ahmed Soussi. Esq. (AZ Bar # 035741)
1819 S. Dobson Road, Suite 214
Mesa, Arizona 85202
Email:  Asoussi@cair.com
Phone: (480) 704-3786

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Mohamed Sabra; and Council on American-Islamic Relations of Arizona,<br><br>Plaintiffs,<br><br>vs.<br><br>Maricopa County Community College District; and Nicholas Damask, in his official and individual capacity<br><br>Defendants. | **Case No.: CV-20-1080-PHX-SMB**<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |

Plaintiffs, Mohamed Sabra ("Mr. Sabra") and the Council on American-Islamic Relations of Arizona ("CAIR-AZ") (together as "Plaintiffs"), through their undersigned counsel, hereby submit their Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss.

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     LEGAL STANDARD................................................................................... 1

III.    ARGUMENT .............................................................................................. 2

        A.      PLAINTIFFS HAVE CONSTITUTIONAL STANDING ............................. 2

                1.      Plaintiffs' Claims Are Not Moot as CAIR-AZ Has Organizational
                        Standing ...................................................................................... 2

                2.      Plaintiffs' Complaint Clearly Alleges A Constitutionally Violative
                        Official Policy, Allowing Standing To Sue MCCCD And Dr.
                        Damask In His Official Capacity ......................................................... 4

        B.      PLAINTIFFS HAVE PLAUSIBLY STATED A CLAIM................................. 6

                1.      Plaintiffs' Complaint Plausibly States A Claim For Violation Of
                        The Establishment Clause ................................................................. 6

                2.      Plaintiffs' Complaint Plausibly States A Claim For Violation Of
                        The Free Exercise Clause ................................................................. 12

        C.      DR. DAMASK CANNOT ESCAPE LIABILITY FOR HIS
                UNCONSTITUTIONAL ACTIONS BY HIDING BEHIND THE
                DOCTRINE OF QUALIFIED IMMUNITY ................................................. 14

IV.     CONCLUSION ......................................................................................... 16

1

2

## **TABLE OF AUTHORITIES**

**Cases**

*AE v. Cty. of Tulare,*
    666 F.3d 631 (9th Cir. 2012)......................................................................... 5

*Am. Diabetes Ass'n v. United States Dep't of the Army,*
    938 F.3d 1147 (9th Cir. 2019)................................................................ 3, 4

*American Family Association, Inc. v. City & Cty. of San Francisco,*
    277 F.3d 1114  (9th Cir. 2002).............................................................. 10, 11

*Ashcroft v. al-Kidd,*
    131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ......................................... 14

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009)............................................. 2

*Brown v. Li,*
    308 F.3d 939 (9th Cir. 2002)................................................................. 13

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.,*
    654 F.3d 975 (9th Cir. 2011)............................................................passim

*California Parents for Equalization of Educ. Materials v. Torlakson,*
    370 F. Supp. 3d 1057 (N.D. Cal. 2019) ....................................... 10, 11, 15

*Callahan v. Woods,*
    736 F.2d 1269 (9th Cir.1984)................................................................ 12

*Comm. For Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma,*
    644 F. Supp. 2d 1177 (N.D. Cal. 2009) ................................................ 3

*Corder v. Lewis Palmer Sch. Dist. No. 38,*
    566 F.3d 1219 (10th Cir. 2009)............................................................ 13

*County of Allegheny v. ACLU,*
    492 U.S. 573, 106 L. Ed. 2d 472, 109 S. Ct. 3086 (1989) ...................... 7

*Deorle v. Rutherford,*
    272 F.3d 1272 (9th Cir. 2001)............................................................... 14

*Grove v. Mead Sch. Dist. No. 354,*
    753 F.2d 1528 (9th Cir. 1985)..........................................................passim

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ........................................................................... 14

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ............................................................................. 2

*Higton v. Quicken Loans, Inc.*,
    No. 2:10-cv-01320 JWS, 2011 U.S. Dist. LEXIS 9274 (D. Ariz. Jan. 28, 2011) .. 1, 2

*Isakhanova v. Muniz*,
    No. 15-cv-03759-TEH, 2016 U.S. Dist. LEXIS 55649 (N.D. Cal. Apr. 26, 2016).... 7

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971) ............................................................................. 7

*Masterpiece Cakeshop Ltd. v. Colorado Civil Rights Comm'n*,
    138 S.Ct. 1729, 201 L. Ed. 2d 35 (2018) ................................................. 9

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241, 94 S. Ct. 2831, 41 L. Ed. 2d 730 (1974) ......................... 14

*Nunez v. City of Los Angeles*,
    147 F.3d 867 (9th Cir. 1998) ............................................................... 4

*Saif'ullah v. Albritton*,
    15-CV-05600 LHK (PR), 2017 WL 6558719 (N.D. Cal. Dec. 21, 2017) ................. 6

*Sch. Dist. of Abington Twp. v. Schempp*,
    374 U.S. 203, 83 S. Ct. 1560 (1963) ................................................... 12

*Sch. Dist. v. Ball*,
    473 U.S. 373, 105 S. Ct. 3216 (1985) ................................................... 7

*Smith v. Pac. Props. & Dev. Corp.*,
    358 F.3d 1097 (9th Cir. 2004) .......................................................... 2, 4

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ............................................................. 5

*Vernon v. City of L.A.*,
    27 F.3d 1385 (9th Cir. 1994) ...................................................... 7, 10, 11

*Vignolo v. Miller*,
    120 F.3d 1075 (9th Cir. 1997) .......................................................... 1, 6

*We Are Am./ Somos Am., Coal. Of Arizona v. Maricopa Cty. Bd. Of Supervisors*,
    809 F. Supp. 2d 1084 (D. Ariz. 2011) ................................................... 3

1

**Statutes**

2

42 U.S.C. § 1983...................................................................................................... 6

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## I.    INTRODUCTION

Defendants Maricopa County Community College District ("MCCCD") and Nicholas Damask ("Dr. Damask") (together as "Defendants"), through their Motion to Dismiss [Doc. 25] ("Motion" or "MTD"), request that this Court dismiss Plaintiffs' well-pled claims based on their spurious assertions that

(1) Plaintiffs lack standing because their claims are moot;

(2) Plaintiffs have failed to allege a constitutionally violative "policy" under 42 U.S.C. § 1983;

(3) Dr. Damask's rhetoric did not have the primary effect of disapproving of Islam;

(4) Forcing a religious individual to choose between his religion and a favorable academic grade is not a burden on religious practice; and

(5) Dr. Damask is entitled to hide behind qualified immunity because the Ninth Circuit has not directly considered an identical fact pattern to the case at bar.

Because Defendant's arguments fail for a variety of reasons, set forth more fully below, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.

## II.    LEGAL STANDARD

"A motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of a plaintiff's claims. *Higton v. Quicken Loans, Inc*., No. 2:10-cv-01320 JWS, 2011 U.S. Dist. LEXIS 9274, at *2-3 (D. Ariz. Jan. 28, 2011). "In reviewing such a motion, '[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party.'" *Id.* (quoting *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997)). As identified herein, Defendants attempt to make factual arguments, without considering the well-pled facts.

To avoid dismissal, a plaintiff must simply "plead facts sufficient to 'state a claim to relief that is plausible on its face.'" *Higton*, 2011 U.S. Dist. LEXIS 9274, at *3 (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Higton*, 2011 U.S. Dist. LEXIS 9274, at *3 (quoting *Iqbal*, 129 S.Ct. at 1949).

## III.   ARGUMENT

### A.  PLAINTIFFS HAVE CONSTITUTIONAL STANDING

#### 1.  Plaintiffs' Claims Are Not Moot as CAIR-AZ Has Organizational Standing

Defendants argue that Plaintiffs' claims are moot on the sole basis that Mr. Sabra has completed the offending course and therefore has no ongoing damages. MTD, pgs. 7-9. However, the preliminary injunction is not being brought by Mr. Sabra, it's brought by CAIR-AZ.[1]  Mr. Sabra is seeking money damages. Further, Defendants' argument fails to recognize that Plaintiff CAIR-AZ has standing on its own behalf under the organizational theory. "[O]rganizations are entitled to sue on their own behalf for injuries they have sustained." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). "[A]n organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [problem] in question." *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). Plaintiff, CAIR-AZ is an Arizona-based 501(c)(3) non-profit organization committed

---

[1] Plaintiff's Notice of Motion and Emergency Motion for a Preliminary Injunction at p. 2. *See* also Memorandum in Support at p. 3.

to education, advocacy, and protecting the civil rights of American Muslims while promoting justice. Complaint, ¶2.

Similar to the situations faced by the Fair Housing non-profits in the above-cited cases, CAIR-AZ's mission is frustrated when Damask spreads his dangerous, Islamophobic rhetoric to the public in his Islamic Terrorism module. *See We Are Am./ Somos Am., Coal. Of Arizona v. Maricopa Cty. Bd. Of Supervisors*, 809 F. Supp. 2d 1084, 1095 (D. Ariz. 2011) ([T]he Ninth Circuit has invoked [Havens] two prong test outside the context of [Fair Housing Act] discrimination).

CAIR-AZ has been forced to "expend time and resources" engaging in a campaign to remedy the injury caused by Defendants, namely their spreading of misinformation and Islamophobia to the impressionable minds of college students. *Comm. For Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma*, 644 F. Supp. 2d 1177, 1195 (N.D. Cal. 2009). Specifically, CAIR-AZ has suffered actual damages by way of a contract it entered into with a religious scholar to create content for the public to debunk the dangerous information in Damask's module. Complaint, ¶63. Plaintiff is diverting both precious resources and time during a global pandemic when fundraising is bleak to counter-act Defendants' unconstitutional behavior.

Defendants' only response to this legal reality is the bald, unsupported assertion that "[a]ny action that CAIR took *after* Mr. Sabra completed the World Politics course was, by definition, not something that CAIR was compelled to undertake because there was no longer an ongoing injury." MTD, pg. 9.[2] This contention is facially preposterous and

---

[2] Defendants purport to support this assertion by citing to *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019). However, a cursory review reveals

contrary to the facts plead in the Complaint. Dr. Damask has been teaching his Islamophobic rhetoric for twenty-four years (fully sanctioned and supported by MCCCD), **and continues to teach the same course to this day**.[3] CAIR-AZ's organizational standing stems from Defendants' frustration of CAIR-AZ's purpose and mission (*Smith*, 358 F.3d at 1105), not from Mr. Sabra's separate injuries. To argue that, because Mr. Sabra's injuries are in the past, declaratory relief is not available for CAIR-AZ, **which continues to suffer injury from Defendants' unconstitutional behavior**, is a complete non sequitur.

> **2. Plaintiffs' Complaint Clearly Alleges A Constitutionally Violative Official Policy, Allowing Standing To Sue MCCCD And Dr. Damask In His Official Capacity**

> i.    *Maricopa County Community College District*

"[T]o sustain a § 1983 action against a municipality, a plaintiff must demonstrate that a governmental policy or custom has caused him injury." *Nunez v. City of Los Angeles*, 147 F.3d 867, 874 n.10 (9th Cir. 1998) (further citation omitted). Regarding the pleading of a *Monell* claim after *Twombly* and *Iqbal*, the Ninth Circuit has stated the following:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual

---

the reason for Defendants' failure to quote a single line from the opinion. Regarding mootness, the Ninth Circuit in *Am. Diabetes Ass'n* stated that "[w]here the challenged conduct "has been 'sufficiently altered so as to present a substantially different controversy . . . [,] there is 'no basis for concluding that the challenged conduct [is] being repeated.'" *Id.* (Brackets in original) (further citation omitted). Relevant to the instant analysis, the Ninth Circuit continued on to reason that the plaintiff "did not divert any resources but was merely going about its business as usual [...] The [plaintiff] has not shown that, at the time the operative complaint was filed and as a result of the New Policy, the [plaintiff] had altered or intended to alter its resource allocation…" *Id.* at 1155. This is entirely distinct from the instant action, where CAIR-AZ has properly pleaded that it has not gone "about its business as usual" but has "altered…its resource allocation." Complaint, ¶63.

[3] Declaration of Imraan Siddiqi In Support of Plaintiff's Motion for a Preliminary Injunction [Doc. 3-1] ("Siddiqi Decl."), ¶¶2, 12.

> allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)).

Defendants argue that Plaintiffs have failed to sufficiently *allege* an "official policy" implemented by MCCCD and therefore have not stated a proper *Monell* claim. MTD, pgs 9-10. In support of this contention, Defendants assert that MCCCD's receipt and acceptance of Dr. Damask's course syllabus is not enough to give rise to the inference of such a policy. MTD, pg. 10. This argument is incorrect.  Dr. Damask has been teaching a form of the violative course module for nearly a quarter century.[4] The assumption, incorporated by MCCCD's position, that twenty-four years of tacit approval of Dr. Damask's Islamophobic rhetoric does not establish a "policy or custom" is contrary to the facts alleged.[5]

The Complaint clearly pleads that Dr. Damask's conduct conformed to official policy, custom or practice of MCCCD, namely that he continued to teach an unconstitutional course, approved by MCCCD for over two decades. Complaint, ¶57. This allegation, when "taken as true" and in context with the entirety of Plaintiffs' Complaint, most certainly "give[s] fair notice and [] enable[s] [MCCCD] to defend itself effectively." *AE*, 666 F.3d at 637.

### ii.    *Dr. Damask in his official capacity*

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects or caused to be subjected, any citizen of the United States .

---

[4] Siddiqi Decl., ¶2.
[5] Regarding Defendants' reliance upon *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 987 (9th Cir. 2011), it is difficult to imagine anything more "*systematic*" than twenty-four straight years of approval of a course module. MTD, pg. 10 (emphasis in original).

. . to the deprivation of any rights privileges or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

Defendants' assertion that Dr. Damask does not "speak with final policymaking authority for [MCCCD or SCC]" is irrelevant. MTD, pg. 11. As expressly admitted in Defendants' Motion, in order to state a claim against an individual in their official capacity for constitutional violations, the "[c]ase law is clear that there must be evidence that the State endorsed or ratified defendants' actions." *Id.* (quoting *Saif'ullah v. Albritton*, 15-CV-05600 LHK (PR), 2017 WL 6558719, at *12 (N.D. Cal. Dec. 21, 2017)).

Plaintiffs have pleaded that Dr. Damask, "under color of …. custom…of [the] State [established by MCCCD's continuous and systematic approval]" has deprived Plaintiffs of their rights under the Establishment Clause of the United States Constitution, as prohibited by § 1983. *See generally,* Complaint. The only further requirement is "evidence that [MCCCD] endorsed or ratified [Dr. Damask's] actions." *Saif'ullah*, 2017 WL 6558719, at *12. As explained in the previous section, there is no rational interpretation of twenty-four years of approval on the part of MCCCD of Dr. Damask's course material other than "endorse[ment] or ratif[ication]," especially when all well-pled assertions are to be taken as true and all ambiguities construed in Plaintiffs' favor. *Vignolo*, 120 F.3d at 1077.

## B.  PLAINTIFFS HAVE PLAUSIBLY STATED A CLAIM

### 1.  Plaintiffs' Complaint Plausibly States A Claim For Violation Of The Establishment Clause

#### i.   *The primary message transmitted by teaching that Islam mandates terrorism is disapproval of Islam*

Government action regarding religion **only** satisfies the Establishment Clause if it (1) has a secular purpose; (2) does not have the principle or primary effect of advancing or

inhibiting religion; and (3) does not foster excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 614 (1971).

"Under the second prong of the *Lemon* test, [the Court] must consider whether it would be objectively reasonable for the government action to be construed as sending primarily a message of either endorsement or disapproval of religion." *Vernon v. City of L.A.*, 27 F.3d 1385, 1398 (9th Cir. 1994) (citing *County of Allegheny v. ACLU*, 492 U.S. 573, 592-93, 106 L. Ed. 2d 472, 109 S. Ct. 3086 (1989)). Contrary to Defendants' attempt to mischaracterize and sanitize Dr. Damask's module, the argument that the Islamic Terrorism module sends anything other than "primarily a message of…disapproval of religion" is contrary to what an informed and objective observe would see, as alleged.

The Northern District of California has held that a similar offense was sufficient to defeat a motion to dismiss. "Statements such as 'All Muslims are terrorists' would be perceived by any reasonable Muslim as 'disapproval of their individual religious choices.'" *Isakhanova v. Muniz*, No. 15-cv-03759-TEH, 2016 U.S. Dist. LEXIS 55649, at *15 (N.D. Cal. Apr. 26, 2016) (quoting *Sch. Dist. v. Ball*, 473 U.S. 373, 105 S. Ct. 3216 (1985)).

This is precisely the primary message transmitted by Dr. Damask's teaching. The various resources presented to students in Dr. Damask's class, when viewed in their "entire context" (as Defendants' emphasize is of the utmost importance [MTD, pg. 14]), explicitly assert that the Quran and the Hadith, the two primary sources of Islam, "mandate[]" the "physical" act of "terrorism" to support a "war against unbelievers," and that this terrorism

mandate "can be traced back" to Prophet Muhammad who committed acts that "*unambiguously would be regarded as terrorism today.*"[6]

This message is further emphasized by Dr. Damask's written assertion that "**[c]ontentions that Islam does not promote warfare or violence cannot be supported on either theological or historical grounds – indeed, such contentions would flatly contradict hundreds of Quranic passages and hadiths ("traditions") of Muhammad, as well as longstanding Islamic jurisprudence**."[7]

Dr. Damask's disapproval of Islam is underscored by his statement that the "legitimacy of terrorism is supported by nearly every Islamic authority of any significance"[8] who are also "unanimous in their approval of suicide attacks."[9] As if this were not brazen enough, Damask further teaches that "Muslim popular opinion has some **sympathy** for terrorism generally, and the ultimate goals of terror group[s] particularly."[10] Finally, Dr. Damask's quiz on the Islamic Terrorism module requires the student to assume that "terrorism [is] *encouraged*" in Islam,[11] and that there is an "official, religiously justified type of warfare waged by the Islamic community on non-believe[rs]".[12]

Again, contrary to Defendants' sanitization, the module does **not** represent a discussion of what *motivates* Islamic terrorism; they explicitly state that Islam is terrorism, and by implict, logical extension, that all Muslims are terrorists. An informed and objective

---

[6] Declaration of Mohamed Sabra In Support of Plaintiff's Motion for a Preliminary Injunction [Doc. 3-2] ("Sabra Decl."), ¶ 8, Ex. A, p. 22-27 (emphasis in original).

[7] *Id.* at 25. (emphasis added).

[8] *Id.* at 28.

[9] *Id.* at 33.

[10] *Id.* at 40. (emphasis in the original).

[11] *Id.* at 6.

[12] *Id.* at 7.

observer would conclude that the primary effect of Damask's instruction is hostility towards Islam. This is because his materials create no conclusion other than that: (1) Islam is dangerous because it mandates the killing of non-believers and (2) no other plausible interpretation exists because the primary sources of Islam, the Prophet Muhammed, Islamic Jurisprudence, Contemporary scholars of Islam, and Muslims all agree that the terrorism/jihad mandate is the only interpretation of the excerpts he cites.

Dr. Damask's teaching utilizes language similar to that condemned by the Supreme Court in *Masterpiece Cakeshop Ltd. v. Colorado Civil Rights Comm'n*., where the defendants attacked the plaintiff's religious beliefs as "one of the most despicable pieces of rhetoric" and compared the plaintiffs to historical individuals who used religion to  "defend slavery and the Holocaust." 138 S.Ct. 1729, 201 L. Ed. 2d 35 (2018). The Supreme Court in *Masterpiece* explicitly described these statements as "inappropriate." *Id.*

Similarly, Dr. Damask's blatant assertion that Islam "unanimous[ly]" mandates the killing of Non-Muslims is  "inappropriate" for a state sponsored professor who "in broaching controversial issues like religion, …must be sensitive to students' personal beliefs and take care not to abuse their positions of authority." *Farnan,* 654 F.3d at 988.

Defendants argue that "academic freedom" allows Damask to teach this unconstitutional module. However, academic freedom does not justify unconstitutional acts, and Defendants have not cited to one case that does. Damask could not use "academic freedom" to justify the endorsement of religion by forcing his students to pray in school, and thus, could not justify disapproving of religion either.[13]

---

[13] *Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*, 605 F.3d 703, 709 (9th Cir. 2010) (*See also Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 174 (3d Cir. 2008)).

In context, Dr. Damask's module transmits the primary (and arguably, the sole) message that Islam mandates violence against unbelievers and that all Muslims ascribe to this viewpoint. If this description of Islam does not constitute "disapproving" language, Ninth Circuit Establishment Clause jurisprudence is meaningless.

ii.    *The instant fact pattern constitutes hostility and disapproval more brazen than any precedential Ninth Circuit case*

In their Motion for Preliminary Injunction and supporting Memorandum [Docs. 3, 6] Plaintiffs set forth the Ninth Circuit jurisprudence governing Establishment Clause violations, explicitly citing the following instructive cases: *Vernon*, 27 F.3d 1385; *American Family Association, Inc. v. City & Cty. of San Francisco*, 277 F.3d 1114  (9th Cir. 2002); *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528 (9th Cir. 1985); *California Parents for Equalization of Educ. Materials v. Torlakson*, 370 F. Supp. 3d 1057 (N.D. Cal. 2019); *Farnan*, 654 F.3d 975.

These cases, through both dicta and holding language, establish a framework for Establishment Clause violations in the Ninth Circuit. Plaintiffs fully acknowledge that each of these cases ultimately denied the respective plaintiffs' Establishment Clause claims. However, these cases support Plaintiffs' position in the instant action because of (1) their substantially dissimilar fact patterns, and (2) dicta instructing future litigants on what **would** constitute an Establishment Clause violation.[14] The practical reality is that the Ninth Circuit has never considered an identical case to the one at bar for the simple reason that no case has been brought where official action was so obviously and blatantly violative. Dr.

---

[14] Plaintiffs request that the Court consider Exhibit A to Plaintiff's Reply in Support of Motion for a Preliminary Injunction [Doc. 24-1] where Plaintiff has compiled short factual and holding summaries for each of the referenced cases.

Damask's actions in the classroom go well beyond "discussion" and into the realm of disapproving of an entire religion from his position as a state-sponsored professor.

Every other Ninth Circuit case with remotely similar facts involves a situation where there is a reasonable interpretation of events which would lead an objective observer to the conclusion that the primary effect was not hostility towards a religion. *See e.g. Vernon*, 27 F.3d 1385 (reasoning that the primary effect of investigating an assistant police chief for allegedly allowing personal religion to shape public police policy was not hostility towards the assistant police chief's religion); *American Family Association, Inc.*, 277 F.3d (reasoning that a public official's pro LGBTQ statement was not hostility towards Christianity as a whole); *Grove*, 753 F.2d 1528 (reasoning that including a book on the "expectations and orientations of Black Americans," which dealt primarily with English literature, in course curriculum did not constitute disapproval of Christianity).

These cases are easily and obviously distinguishable from the instant action. In each of the above cases, the alleged hostility was a disagreement with a particular belief within a religion.  Unlike those cases, the module explicitly states that the religion of Islam unquestionably mandates violent terrorism. There is no interpretation of the Islamic Terrorism module that would allow a reasonable, objective observer to conclude anything other than disapproval of Islam. While no Ninth Circuit case, to date, has faced an Establishment Clause question with an identical fact pattern, Dr. Damask's actions fall neatly within the frameworks of multiple Ninth Circuit cases describing what **would** be a violation of the Establishment Clause. *See e.g. Farnan*, 654 F.3d 975 (stating that teachers "must be sensitive to students' personal beliefs and take care not to abuse their position of authority" and that "at some point a teacher's comments on religion might cross the line and rise to the level of unconstitutional hostility."); *Torlakson*, 370 F. Supp. 3d 1057 (explicitly stating that,

in the education context, "truly derogatory language...would...qualify as...government action that directly...disapproves of religion").

Teaching students that Islam mandates violence against unbelievers unquestionably represents "truly derogatory language." The fact that the Ninth Circuit has not yet been presented with actions as brazen as Dr. Damask's is not enough to justify dismissal of Plaintiffs' Establishment Clause claim without the benefit of discovery.

### 2. Plaintiffs' Complaint Plausibly States A Claim For Violation Of The Free Exercise Clause

"The free exercise clause recognizes the right of every person to choose among types of religious training and observance, free of state compulsion. *Grove*, 753 F.2d at 1533 (citing *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 222, 83 S. Ct. 1560, 1571 (1963). "To establish a violation of that clause, a litigant must show that challenged state action has a coercive effect that operates against the litigant's practice of his or her religion." *Grove*, 753 F.2d at 1533 (citing *Schempp*, 83 S. Ct. at 1572).

"Three factors are relevant in [the Court's] analysis: (1) the extent of the burden upon the exercise of religion, (2) the existence of a compelling state interest justifying that burden, and (3) the extent to which accommodation of the complainant would impede the state's objectives. *Grove*, 753 F.2d at 1533 (citing *Callahan v. Woods*, 736 F.2d 1269, 1273 (9th Cir.1984)).

Defendants mischaracterize Plaintiffs' Complaint and misconstrue Plaintiffs' arguments in order to assert that Mr. Sabra's "offense" at course material does not rise to the level of a Free Exercise Clause violation. Defendants' straw-man argument fails to consider the **uncontroverted fact** that Dr. Damask presented Mr. Sabra with the following choice: Either adopt and approve of the view of Islam promulgated by Dr. Damask (and thereby

denounce his own Islamic religious beliefs) by selecting the "correct" multiple choice answers on the module quiz, or receive a lower grade, potentially affecting Mr. Sabra's academic and professional future, as alleged.

There is simply no "compelling state interest" justifying the burden placed upon Mr. Sabra (or current/future students) by Dr. Damask's course work and quiz. Requiring a student to adopt an interpretation of his own religion which is antithetical to his beliefs in order to receive a favorable grade is in unjustifiable burden, and the appropriate "accommodation" (not indoctrinating students with Islamophobic rhetoric) cannot be said to impede a valid "state[] objective[]."*Grove*, 753 F.2d at 1533.

Furthermore, the instant fact pattern is markedly different than that of *Brown v. Li*, heavily relied upon by Defendants. MTD, pg. 16 n.12 (citing (308 F.3d 939, 953 (9th Cir. 2002)). First, the *Brown* decision did not even involve a Free Exercise claim. Second, the student in *Brown* objected to his thesis not being published in the university's library due to his decision to add an unapproved section after final draft approval had been given, in direct contravention to the university's thesis policy. This is not even remotely similar to forcing a religious student to choose between (1) accepting and approving an insulting, offensive, and incorrect view of his own beliefs, or (2) receiving a less favorable academic transcript.

Contrary to Defendants' arguments, Mr. Sabra has pleaded that Defendants' imposed a substantial burden on his ability to practice his religion by requiring that he denounce his religion in order to receive a favorable grade in the World Politics class. While not directly on point as to the Free Exercise clause, it is worth noting that "[t]he Supreme Court has long recognized that, for purposes of the First Amendment, forced speech is no different than censored speech." *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1231 (10th Cir. 2009) (citing *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 256, 94 S. Ct. 2831, 41 L.

Ed. 2d 730 (1974)). Defendants attempted to force Mr. Sabra to speak in direct contravention of his religious beliefs. Defendants should not be allowed to escape liability on a motion to dismiss for this obvious burden to Mr. Sabra's free exercise by irrelevantly intimating that "offense" does not provide a "basis for a Free Exercise challenge" and thereafter citing to impertinent case law.

### C. Dr. Damask Cannot Escape Liability For His Unconstitutional Actions By Hiding Behind The Doctrine Of Qualified Immunity.

Qualified immunity protects government officials, such as Dr. Damask, **only** where the conduct complained of "does not violate clearly established…constitutional rights of which a reasonable person would have known." *Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).

Defendants' argument regarding qualified immunity rests solely on the contention that there was no case law, directly on point, published prior to Dr. Damask's conduct, which would have put him on notice that teaching students that Islam mandates violence and forcing a student to choose between his religion and a favorable course grade is a violation of Plaintiffs' constitutional rights.

Defendants' position is refuted by the Ninth Circuit's express acknowledgement in discussing qualified immunity that "Courts do not require a case directly on point." *Farnan*, 654 F.3d at 986 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011). All that is required for notice that activity is violative of constitutional rights is "existing precedent [that] place[s] the […] constitutional question beyond debate." *Farnan,* 654 F.3d at 986.

As explained previously, while there are no Ninth Circuit opinions directly dealing with conduct as brazen as Dr. Damask's (which is immaterial as "Courts do not require a

case directly on point"), jurisprudence within the Ninth Circuit has established that derogatory, disapproving statements about a religion from a position of state authority (such as a state sponsored professor) can most certainly be violative of the Establishment Clause. *See e.g. Farnan*, 654 F.3d 975 (stating that teachers "must be sensitive to students' personal beliefs and take care not to abuse their position of authority" and that "at some point a teacher's comments on religion might cross the line and rise to the level of unconstitutional hostility."); *Torlakson*, 370 F. Supp. 3d 1057 (explicitly stating that, in the education context, "truly    derogatory    language...would...qualify    as...government    action    that directly...disapproves of religion").

Furthermore, the Department of Justice and Department of Education's joint statement provided Damask with sufficient notice that he cannot say Islam mandates terrorism.  The Ninth Circuit has relied on agency statements before to find sufficient notice to defeat qualified immunity.  *Hardwick v. Cty. of Orange,* 844 F.3d 1112, 1120 (9th Cir. 2017). Both agencies put out a joint statement titled "*Combating Discrimination Against Asian American, Native Hawaiian, and Pacific Islander and Muslim, Arab, Sikh, South Asian Students."* In this joint statement, the agencies gave examples of what "could violate laws enforced by" them. One of the examples is almost identical to what Damask said in his module:

> During a lesson about 9/11, classmates of a Muslim middle school student call him a terrorist and tell him to go back to his country. The teacher tells the class that only some Muslims are terrorists, and asks the student why Muslims have not denounced the terrorist attacks of 9/11.[15]

---

[15] DOJ and Dept of Ed *Combating Discrimination Against AANHPI and MASSA Students* (https://files.eric.ed.gov/fulltext/ED601924.pdf) (last visited on 6/2/2020).

Regarding Plaintiffs' Free Exercise claim, the same analysis applies. There need not be "a case directly on point" but rather an establishment in case law that forcing a student to speak against his religion is a constitutional violation. The Ninth Circuit clearly set forth the proper analysis of a Free Exercise claim in 1985. *Grove*, 753 F.2d at 1533 A reasonable person would look to *Grove* and conclude that Dr. Damask's conduct was forbidden as it placed a substantial burden on Mr. Sabra's ability to freely practice his religion without any state interest to justify that burden. *Id.*

Dr. Damask's actions, taken over the course of twenty-four years, of indoctrinating malleable minds with his Islamophobic interpretations of the Qur'an and forcing a student into the position of choosing between his religion and a grade constitute a violation of both the Establishment and Free Exercise clauses of the United States Constitution. Dr. Damask either did know, or should have known, that such behavior is inappropriate and unconstitutional at a publicly funded university, and is therefore not entitled to hide behind qualified immunity and escape liability for the damages inflicted to Plaintiffs.

## IV.   <u>CONCLUSION</u>

For these reasons, Plaintiffs Mohamed Sabra and the Council on American-Islamic Relations of Arizona respectfully request that this Court deny Defendants' Motion to Dismiss.

Respectfully submitted on July 10, 2020.

By: /s/ *David Chami*
David Chami, Esq. (AZ Bar # 027585)
PRICE LAW GROUP, APC
8245 N. 85th Way
Scottsdale, Arizona 85258
Phone: (818) 600-5515
Fax:     (818) 600-5415

Raees Mohamed, Esq. (AZ Bar # 027418)
RM WARNER
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Phone: (480) 331-9397
Fax:     (866) 961-4984

Ahmed Soussi. Esq. (AZ Bar # 035741)
COUNCIL ON AMERICAN-ISLAMIC
RELATIONS OF ARIZONA
1819 S. Dobson Road, Suite 214
Mesa, Arizona 85202
Email:  Asoussi@cair.com
Phone: (480) 704-3786

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system. Notice of such filing will be sent to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

PRICE LAW GROUP, APC

By: /s/ *Florence Lirato*
Florence Lirato

17