**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Mohamed Sabra and Council on American-Islamic Relations of Arizona,

Plaintiffs,

v.

Maricopa County Community College District and Nicholas Damask,

Defendants.

No. CV-20-01080-PHX-SMB

**ORDER**

Pending before the Court is Defendants' Motion to Dismiss. (Doc. 25) Although a preliminary injunction motion is also pending, the Court has postponed its ruling on that motion until resolving this one because of the dispositive legal issues raised. (Doc. 27) Oral argument was heard on August 6, 2020 for this motion. (Doc. 33) After considering the pleadings and oral argument, the Court will grant the motion for the reasons explained below.

## I. BACKGROUND

Arising out of an Islamic Terrorism module in an online World Politics course taught by Dr. Nicholas Damask, this case tests the limits of the First Amendment's Religion Clauses. Mohamed Sabra enrolled in this spring semester course at Scottsdale Community College ("SCC") in 2020. (*Id.* ¶ 7.) Its syllabus describes it as one that will provide an "[i]ntroduction to the principles and issues relating to the study of international relations. Evaluation of the political, economic, national, and transnational rationale for international

interactions." (*Id.*)

The course is organized into six modules, each containing multiple components to explore various topics concerning world politics. (*Id.* ¶ 8.) The Islamic Terrorism module challenged by Mr. Sabra and the Council on American-Islamic Relations of Arizona ("CAIR-AZ") had three components: a PowerPoint presentation, excerpts from *Future Jihad*, and a quiz. (*Id.* ¶¶ 8-9.) The PowerPoint presentation explored world politics through three sub-topics: (1) "Defining Terrorism"; (2) "Islamic Terrorism: Definition"; and (3) "Islamic Terrorism: Analysis." (*Id.* ¶¶ 10-32.) The second component required students to read excerpts from *Future Jihad*, a book published by Walid Phares, and the quiz evaluated students on their comprehension of course material with twenty-five multiple choice questions. (*See id.* ¶¶ 33-53.)

Plaintiffs take issue with Dr. Damask's instruction throughout these various Islamic Terrorism module components, alleging that his teachings violate the Establishment Clause and Free Exercise Clause of the First Amendment to the United States Constitution. (*Id.* ¶¶ 64-74.) Plaintiffs allege his instruction unconstitutionally "conclude[es] that Islam 'mandates' terrorism and the killing of Non-Muslims, and that this is the only interpretation of religious texts, but without any disclaimer to inform students that this is one-perspective and that Islam itself does not condone terrorism." (*Id.* ¶ 67.) They further allege that Dr. Damask "is not teaching that only some extremists espouse these beliefs, but rather that literally, Islam itself teaches the mandates of terrorism." (*Id.* ¶ 68.) And "[t]he only objectively reasonable construction of [Dr.] Damask's actions," Plaintiffs allege, "is that his primary message is the disapproval of Islam." (*Id.* ¶ 69.) As it specifically concerns the quiz, Plaintiffs allege "[it] forced [Mr.] Sabra to agree to [Dr. Damask's] radical interpretation of Islam." (*Id.* ¶ 74.) And when Mr. Sabra refused to answer questions in accordance with what he learned in the course, his answers were marked wrong, and his course grade was negatively impacted. (*Id.*)

Plaintiffs' Establishment Clause and Free Exercise Clause claims are brought against Dr. Damask in his individual and official capacities and the Maricopa County

Community College District ("MCCCD") under 42 U.S.C. § 1983.[1] Each Plaintiff requests declaratory and injunctive relief, nominal damages, and attorneys' fees and costs. Dr. Damask and MCCCD move to dismiss both Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As a result, "[i]t is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests with the party asserting jurisdiction." *Id.* (internal and external citations omitted). Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject-matter jurisdiction. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011). Motions to dismiss under this Rule "may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F.Supp.2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). And "unlike a motion under Rule 12(b)(6), the moving party may submit 'affidavits or any other evidence properly before the court.'" *Assoc. of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). If the moving party submits evidence showing a lack of subject matter jurisdiction, "[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair*, 880 F.2d at 201. But "[w]hen the motion to dismiss attacks the allegations of the complaint as insufficient[,]" like here, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Renteria*, 452 F.Supp.2d at 919 (citing *Fed'n of African Am. Contr.*

[1] MCCCD is alleged to have had constructive knowledge of Dr. Damask's allegedly unconstitutional conduct. (*Id.* ¶¶ 57, 58, 70.) In addition, Dr. Damask is alleged to be a policymaker for MCCCD. (*Id.* ¶¶ 59, 71.)

*v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996)).

In addition to moving to dismiss for lack of subject-matter jurisdiction, a party may move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). When evaluating a complaint under Rule 12(b)(6), well-pled factual allegations are presumed true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must meet Rule 8(a)(2)'s minimum requirements. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint setting forth a cognizable legal theory survives a motion to dismiss if it contains enough factual allegations stating a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility only exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III. DISCUSSION

The Court begins with Defendants' challenges to the Court's power to hear this case. Just because Plaintiffs allege First Amendment claims does not necessarily mean the Court can render a judgment affecting the parties' rights.[2] Rather, only if the Court has

---

[2] At the preliminary injunction evidentiary hearing that was ultimately vacated pending the Court's ruling on this motion, Plaintiffs' counsel argued that "the Court has jurisdiction to hear a First Amendment Establishment Clause [case]." (Doc. 27.) This is of course only partially true. Although Congress can, and has limited the Court's jurisdiction by statute,

jurisdiction can the parties' grievances be heard. If that is the case, the Court will turn to the remaining arguments under Rule 12(b)(6).

### A. <u>Article III Standing</u>

The Court's jurisdiction is limited to cases and controversies. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."). To show a case or controversy exists, each plaintiff must establish that he, she, or it has standing to bring its alleged claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). To show such a thing, "[each] plaintiff must demonstrate (1) that [he, she, or it] suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant[s], and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S.Ct. 1615, 1618 (2020).

Here, Dr. Damask and MCCCD argue that Plaintiffs lack standing to bring their First Amendment claims because Mr. Sabra finished the World Politics course at SCC before bringing this action and no "official policy" is alleged to have caused their injuries. (Doc. 25 at 2, 7-12.) Without meaningfully disputing that Mr. Sabra lacks standing because his claims are moot—Plaintiffs merely state "Mr. Sabra is requesting money damages"—they argue that CAIR-AZ has organizational standing. (Doc. 29 at 8-12.) They further argue that the complaint alleges a municipal policy that caused their injuries and permits their lawsuit against MCCCD and Dr. Damask in his official capacity. (*Id.* at 10-12.)

#### i. <u>Mr. Sabra's Has Standing for His Constitutional Claims.</u>

Standing for each claim must continue to exist throughout the course of litigation,

---

*see e.g.* 28 U.S.C. § 1331, the standing requirement in Article III of the United States Constitution is an entirely separate inquiry. *See Lujan*, 504 U.S. at 560–61.

or the claim becomes moot. *Doe v. Madison School Dist. No. 321*, 177 F.3d 789, 797-98 (9th Cir. 1999); *Ruiz v. City of Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998) ("Generally, an action is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").

Here, it is undisputed Mr. Sabra completed the World Politics course; therefore, it does not appear that the Court could remedy his alleged injuries by declaratory or injunctive relief. However, Plaintiffs request nominal damages on Mr. Sabra's behalf, which permits the Court to provide relief. Thus, Mr. Sabra's request for declaratory and injunctive relief are moot, but his request for nominal monetary damages survives. *See Doe*, 177 F.3d at 798.

ii. CAIR-AZ lacks standing

An organization may have Article III standing to sue on its own behalf when "it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [conduct] in question." *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (quoting *Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004)).[3] "An organizational plaintiff must allege 'more than simply a setback to the organization's abstract social interests.'" *Mecinas v. Hobbs*, No. CV-19-05547-PHX-DJH, 2020 WL 3472552, at *9 (D. Ariz. June 25, 2020) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). "It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Courts have found

[3] Alternatively, "[a]n organization has standing to sue on behalf of its members where: '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Am. Diabetes Ass'n*, 938 F.3d at 1154 (quoting *Ecological Rights Found.*, 230 F.3d at 1147). Plaintiffs do not argue for associational standing under this theory. "CAIR-AZ's organizational standing stems from Defendants' [conduct], not from Mr. Sabra's separate injuries." (Doc. 29 at 10.)

organizational standing is present where an organization is not simply going about their business as usual, but where the organization "had altered their resource allocation to combat the challenged practices." *Am. Diabetes Ass'n*, 938 F.3d at 1154. Further, in *Havens Realty*, the Supreme Court found organizational standing after determining that the organization had established a "'concerted and demonstrable injury to [its] activities.'" *Id.* (citing *Havens Realty*, 455 U.S. at 379, 102 S.Ct. 1114).

"[CAIR-AZ] is an Arizona-based 501(c)(3) non-profit organization committed to advocacy and protecting the civil rights of American Muslims while promoting justice." (Doc. 1 ¶ 2.) "To remedy the damage done by Damask, CAIR-AZ has had to divert their resources to create a campaign correcting the Islamophobic information. CAIR-AZ has contracted with a religious scholar to create materials for this campaign. (Doc. 1 ¶ 63.)" CAIR-AZ has not stated how hiring a religious scholar to create materials to advocate against Islamophobic information is anything out of the realm of the normal advocacy that they do.

Here, CAIR-AZ, unlike the organization in *Havens*, has not established a concrete and demonstrable injury that would allow them to have standing against the Defendants. CAIR-AZ has not effectively shown that it would have suffered an injury if it had not diverted resources to counteract Dr. Damask's allegedly "Islamophobic" teachings. Instead, the module of Dr. Damask's course that contained the materials and quiz at issue are akin to a mere social setback for CAIR-AZ's abstract social interest of advocacy and protecting the civil rights of American Muslims while promoting justice. Although the Complaint alleges that CAIR-AZ created a campaign to combat the misinformation and contracted with a religious scholar to create material for the campaign (Doc. 1 ¶ 63.), the Plaintiffs do not allege that creating material to correct Islamophobic information is not a normal function of their advocacy and not "business as usual." *See Amer. Diabetes Ass'n*, 938 F.3d at 1154. The Complaint also fails to specify from which source CAIR-AZ diverted resources to create the campaign. Thus, the Court finds that CAIR-AZ does not allege a concrete and demonstrable injury and has not effectively shown a diversion of

resources that is not a normal part of the organization's activities. Thus, CAIR-AZ lacks organizational standing under Article III to bring claims against the Defendants, and their claims must be dismissed pursuant to Rule 12(b)(1).

**B. Failure to State a Claim Under Rule 12(b)(6)**

Mr. Sabra has standing so the Court addresses Defendants' alternative argument that the complaint alleges no First Amendment claim as a matter of law and must be dismissed. (Doc. 25 at 2, 12-17.) Defendants also argue that even if it adequately alleges these claims, no claim can be brought against Dr. Damask in his individual capacity under the doctrine of qualified immunity. (*Id.* at 2, 17-19.) Plaintiffs disagree, arguing that the complaint plausibly alleges First Amendment claims, (Doc. 29 at 12-20), and that clearly established law prohibited Dr. Damask's allegedly unconstitutional instruction. (*Id.* at 20-22). The Court addresses each claim in turn before Dr. Damask's claim to qualified immunity.

i. Establishment Clause

"The Religion Clauses of the First Amendment provide that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Espinoza v. Montana Dept. of Rev.*, 140 S.Ct. 2246, 2254 (June 30, 2020). This includes not only government approval of religion, but its disapproval of or hostility toward religion. *American Family Association, Inc. v. City & Cty. of San Francisco*, 277 F.3d 1114, 1121 (9th Cir. 2002); *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011).

Courts are directed to apply the "Lemon test" in cases challenging government conduct under the Establishment Clause. *Id*. at 1121. Government action regarding religion only satisfies the Establishment Clause if it (1) has a secular purpose; (2) does not have the principle or primary effect of advancing or inhibiting religion; and (3) does not foster excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 614 (1971).

Plaintiffs argue that the challenged module fails under the second prong of the *Lemon* test. "Under the second prong of the Lemon test, [the Court] must consider whether the government action has the principal or primary effect of advancing or inhibiting

religion." *Am. Family*, 277 F.3d at 1122 . When making this determination, courts decide whether it would be "objectively reasonable for the government action to be construed as sending primarily a message of either endorsement or disapproval of religion." *Vernon v. City of L.A.*, 27 F.3d, 1385, 1398 (9th Cir. 1994); *Am. Family*, 277 F.3d at 1122 ("A reasonable, informed and objective observer would not the view the primary effect of this resolution as inhibition of religion."). The analysis is whether the government action "'primarily' disapproves" of religious beliefs notwithstanding the fact that one may infer possible government disapproval of religious beliefs. *Vernon*, 27 F.3d at 1398. Under this objective standard, even where the government practice reflects "some disapproval" of religion, this alone is not enough to run afoul of the Establishment Clause. *California Parents for Equalization of Educ. Mat. v. Torlakson*, 370 F.Supp.3d 1057, 1079 (N.D. Cal. 2019). "Courts have long emphasized the importance of academic freedom in deciding the appropriate curriculum for the classroom." *Smith v. Arizona*, No. CV 11-1437-PHX-JAT, 2012 WL 3108818, at *7 (D. Ariz. July 31, 2012).

Examining the course as a whole, a reasonable, objective observer would conclude that the teaching's primary purpose was not the inhibition of religion. The offending component was only a part of one-sixth of the course and taught in the context of explaining terrorism. One aspect of terrorism is Islamic terrorism. Only in picking select quotes from the course can one describe the module as anti-Islam. Dr. Damask also quotes Peter Bergen for the view that the terrorist threat comes from radical terror groups that represent a "twisted" variant of Islam as a whole.[4] Thus, the Court finds that the primary effect of Dr. Damask's course is not the inhibition of the practice of Islam. Therefore, the Plaintiffs' Establishment Clause claims must be dismissed pursuant to Rule 12(b)(6).

---

[4] Further, as Plaintiff's counsel misstated in oral argument, Question 19 of Dr. Damask's quiz on terrorism states: "Walid Phares notes that although 'gullible' Westerners are taught that jihad can have two meanings, people in the Arabic world understand that its overwhelmingly obvious meaning is______." (Doc. 1, Ex. 3). This question merely asks students to identify the opinion of Walid Phares regarding Islam, not to adopt his position on Islam.

ii. Free Exercise Clause

"The Free Exercise Clause, which applies to the States under the Fourteenth Amendment, 'protects religious observers against unequal treatment' and against 'laws that impose special disabilities on the basis of religious status.'" *Espinoza*, 2020 WL 3518364, at *5 (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct. 2012, 2021 (2017)). In order to demonstrate a violation of the Free Exercise Clause, "a litigant must show that challenged state action has a coercive effect that operates against the litigant's practice of his or her religion." *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir. 1985). Put another way, the challenged government conduct must substantially burden a religious practice. *Am. Family*, 277 F.3d at 1123. The factors to consider in a Free Exercise challenge are: "(1) the extent of the burden upon the exercise of religion, (2) the existence of a compelling state interest justifying that burden, and (3) the extent to which accommodation of the complainant would impede the state's objectives. *Id.* (citing *Callahan v. Woods*, 736 F.2d 1269, 1273 (9th Cir. 1984)).

Curriculum that merely conflicts with a student's religious beliefs does not violate the Free Exercise Clause. *Parker v. Hurley*, 514 F.3d 87, 106 (1st Cir. 2008) (requirement that public school students to read a book featuring gay couples did not violate constitutional rights of Christian parents or children); *California Parents for Equalization of Educ. Materials v. Torlakson*, 267 F. Supp.3d 1218, 1225-27 (N.D. Cal. 2017) (ruling that requiring students to learn class material that the plaintiffs viewed as "derogatory towards Hinduism" did not violate the Free Exercise Clause). "'[D]istinctions must be drawn between those governmental actions that actually interfere with the exercise of religion, and those that merely require or result in exposure to attitudes and outlooks at odds with perspective prompted by religion.'" *Torlakson*, 267 F.Supp.3d at 1226-27 (quoting *Grove*, 753 F.2d at 1543). Government action that merely offends religious beliefs do not violate the Free Exercise Clause, "'actual burden on the profession or exercise of religion is required.'" *Id.* at 1227 (quoting *Groves*, 753 F.2d at 1543).

Here, Mr. Sabra alleges that he was forced to choose between denouncing his

religion by selecting the "correct" answer or receiving a lower grade. That is simply not correct. As Defendants point out, Mr. Sabra was not required to adopt the views expressed by Dr. Damask or the authors Dr. Damask cited to in his course, but only to demonstrate an understanding of the material taught. Dr. Damask's course did not inhibit Mr. Sabra's personal worship in any way. Instead, Mr. Sabra was simply exposed to "attitudes and outlooks at odds" with his own religious perspective. *See Torlakson*, 267 F.Supp.3d at 1226-27. Therefore, as a matter of law, the Court finds that the Plaintiff's allegations do not amount to a violation of the Free Exercise Clause by the Defendants, and these claims must be dismissed pursuant to Rule 12(b)(6).

iii. <u>Dr. Damask's Qualified Immunity</u>

Government officials are entitled to qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Officials are not entitled to qualified immunity if "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, — U.S. —, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, (2012)). Courts may address either prong first depending on the circumstances in the case. *Pearson v. Callahan*, 555 U.S. 223, 230–32, 235-36 (2009).

In determining whether a constitutional right was clearly established at the time of the alleged violation, "a case directly on point" is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). Both Defendants and Plaintiffs have cited to numerous cases surrounding what constitutes an Establishment Clause violation in a college classroom. An analysis of those cases demonstrates that existing precedent is anything but clear. This is especially true in the context of teaching topics that surround and /or incorporate religion. *See, e.g., C.F. ex rel. Farnan*, 654 F.3d at 986 (finding that the law on Establishment Clause violations by

teachers in the classroom "was not clearly established at the time of the events in question"). *See also Smith v. Arizona*, 11-1437-PHX-JAT, 2012 WL 3108818, at *7 (refusing to conclude that a community college professor would have been aware that conduct was in violation of "clearly established constitutional right.").

The Court cannot conclude that Dr. Damask would have been on notice that his actions might be unconstitutional and therefore finds that he would be entitled to qualified immunity if Plaintiff's claims had not been dismissed on other grounds.

**IV.CONCLUSION**

For the reasons discussed above,

**IT IS ORDERED granting** Defendants' Motion to Dismiss (Doc. 25).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to terminate this case.

Dated this 18th day of August, 2020.

Honorable Susan M. Brnovich
United States District Judge